All right, Ms. Bennett, we're ready when you are. May it please the Court, Lisa Bennett from the Office of the Solicitor General representing the Commissioners. This case is about medical services reimbursement under Texas' state workers' compensation system. The Airline Deregulation Act does not touch this area, and the McCarran-Ferguson Act further ensures that it cannot. I will begin with express preemption and turn to McCarran-Ferguson if there's time, but that's where counsel for the insurers will pick up. So turning first to the question of ADA preemption, this Court's en banc opinion in Hodges provides the roadmap for designing this case. In that case, the Court proceeded in three steps. First, it began with the text itself and the Supreme Court's interpretations of that text. It was at this textual stage that the Court initially concluded that services in the ADA preemption clause means bargain for services. Second, recognizing that it was dealing with a closed case, the Court also dug deeper to make sure it was reading the text in context. It sought to harmonize the preemption provision with surrounding statutes, and it found further persuasion in the fact that the ADA did not provide a federal remedy that would fill the whole preemption would create. Third, the Court applied a presumption against preemption. The Court should do the same thing here. So running through those three steps in this case. First, looking— Why does the term services work in this instance, given the nature of this airbag sort of—I mean, in Hodges, Delta Airlines, you know, we're dealing with, you know, the airline market, you know, buying tickets, et cetera, all the kinds of things that go with the commercial aspects of flying, and services was the term of art, to be sure. So in this instance, with airbag and the nature of this, does price or cost or these other words, you argue they're sort of interchangeable with services, so that's why we ought to follow Hodges, or is that a real distinction that matters here? Well, Hodges itself found that they were interchangeable. So there's a point in Hodges where the Court actually substitutes in brackets the word services, where the Supreme Court in Morales was talking about price. So the en banc court in Hodges expressed that they did view the interpretation of these terms to be interchangeable. They both admit of the same limitation on being bargained for. The panel opinion in that case, on which the en banc's definition was adopted, further spoke of the basically are the arena in which the airlines do bargain. So we've got plenty of indication from Hodges that these terms should be interpreted in the same way. Furthermore, they're adjacent terms, and by following the analytical approach that was used in Hodges, we get to the same place. So speaking first about the clarity that Hodges, basically the application of Hodges here, and the clarity that the price must mean bargained for price in this context as well, we can look both to dictionary definitions, like Black's Law Dictionary refers to the price being something that's voluntarily accepted. We can look to the technical meaning of the terms. In this case, in the medical services context generally, there is a complete distinction between a billed charge versus a reimbursement amount, and certainly an insurance benefit, which is the part of the case that we're dealing with here. And there's ample authority out of the Texas Supreme Court that talks about that, as well as many other courts around the country. And finally, looking even to the cases from the other circuits, we have a number of cases that discuss implied contract, and that the only fee to which an air ambulance would be entitled under just taking away the workers' compensation and ADA systems would be a reasonable price under an implied contract. So if we take that to be a more accurate representation of what the market price would be, then truly the division's requirement of payment of fair and reasonable reimbursement to these air ambulances cannot be said to be changing what the market would otherwise be dictating. So going to the second step of Hodges, because this, too, is a close case, the court should harmonize the provision with surrounding statutes. And in this case, when I'm talking about the surrounding statutes, I'm primarily talking about the Medicare-Medicaid system. So those systems predated the Airline Deregulation Act, and they continued after, unchanged. And in fact, in 1997, Congress actually passed legislation requiring the Center for Medicaid and Medicare Services to adopt fee schedules for air ambulances. So there's been further statement from Congress that, yes, CMS should keep regulating air ambulance reimbursement and should, in fact, promulgate fee schedules. So in the face of that continued federal regulation by a completely different entity than the Department of Transportation, it's nonsensical to say that the state division of workers' compensation doing the same thing would somehow be undoing deregulation that had taken place due to the ADA. And I'd further note that under Medicaid, payments to air ambulances are actually set by states pursuant to federal approval. But under Medicaid, states do adopt fee schedules, and they simply must get approval from the federal government. So even under that Medicaid system, there is contemplation of a state involvement there. So also because this is a closed case, the Court should, like it did in Hodges, confirm that its reading furthers the ADA's purpose. And when we're talking about purpose, we're not talking about looking extrinsically to legislative history or anything else. What we're talking about is the clear statements of purpose that Congress put in the Act itself. And they discussed that the Act was being promulgated in order to encourage competition and to benefit consumers by harnessing competition to get low prices, good services, good routes. And that is the antithesis of the outcome that AIREVAC is seeking here. What AIREVAC is seeking here is to keep the state workers' compensation machinery that requires payment by insurers, but just be able to charge whatever they want. And be able to, more importantly, be reimbursed whatever they want. They don't want to lose money. I mean, how could it encourage competition if these airlines and if these AIREVAC businesses are not fully compensated? Well, first, as a factual matter, the workers' compensation system in Texas reimburses air ambulance companies more than they get on average. So I believe about 50 percent of the reimbursements come from Medicare and Medicaid. And the fair and reasonable reimbursement that the division has adjudicated that, by the way, does get to be appealed up through SOA and through the Texas court system, has given more than that. So there's no set cap, no. And that's an important distinction to the extent this court is concerned about creating a circuit split with some of the weight of authority that's piling up in different kinds of cases. Here, the division is adjudicating a fair and reasonable reimbursement. A number of those other courts have recognized that a fair or reasonable amount is what an air ambulance should get to recover under principles of implied contract. And contract, of course, is excluded from ADA preemption by Woollens. So here, we don't have a state system that is setting a price artificially, you know, at Medicare or, you know, at a fee schedule rate. And we did have that in many of the other cases, Cheatham, to name one, and I believe Eagle Med as well. A number of the other cases dealt with express fee schedules for air ambulances. Here, we have case by case fair and reasonable reimbursement. Finally, this court, like the court in Hodges, should recognize that the ADA does not provide a price term that we can substitute in here. And there's no dispute mechanism provided for an air ambulance fee dispute under the ADA. And we could expect there to be something like that if there were an intention by Congress to preempt state workers' compensation. And that's one of the factors that the Travelers Court looked to in the ERISA context. And I see I'm out of time. If there are no further questions, I'll hand it over to the insurers. Mr. Baumgartner. May it please the Court. I would like to address the McCarran-Ferguson issue. And the law on McCarran-Ferguson is quite clear. Where the state writes benefit terms into insurance policy contracts and where the state of its obligations under those insurance policy contracts that it sells, the most central obligation, of course, is paying the benefits required by that policy. Where the state regulates directly those two things, it's regulating the very core of the business of insurance under the McCarran-Ferguson Act. And it's important to understand how this works in the Texas workers' compensation system. Council used the term reimbursement several times. What is that reimbursement? The reimbursement here are medical benefits prescribed by the state and required to be paid by actual insurance policies. So Texas workers' compensation is uniquely, among all 50 states, an insurance market. It is not a government program that relies on taxes and government distributions. It is instead a regulated private insurance market. Therefore, Texas workers' compensation is insurance policies. I have the key page of which right here. The Texas workers' compensation insurance policy is written by the state, and it has one benefit term. The benefit term says that the insurer who issues it must pay promptly when due the benefits required by the workers' compensation law. These laws, and there are three, there's one statutory provision and two division rules. These laws are the only medical benefits required by this insurance contract. The insurance contract requires payment of other benefits as well. That's because this type of insurance transfers the risk that an injured worker might need medical services to the insurer. It transfers the risk that the injured worker might need income replacement to the insurer. And it transfers the risk of death to the insurer. And all of those types of insurance policy contract benefits are mandated by state law. And when the insurer receives a claim for payment of insurance policy benefits, it must pay the amounts dictated by the state law. That's how it works. It's a very simple construction. Real insurance policies, real insurance companies receiving claims for benefits, adjusting those claims under the confines and dictates of state law, and paying out those benefits. That's precisely what we have here, and that's all that we have here. When you say adjusting, would that include the reimbursement cap? Yes, that includes the payment of policy benefits. The court used the term reimbursement cap. What that means here is the benefits set by the policy, by direct reference to state law. So the reimbursement cap, there's a cap that is in theory at issue here, because the law has multiple parts. The part at issue here, by AIR-VVAC's request, with its alternative claims, is the medical benefit laws. The laws requiring the insurance companies to pay the benefits set by state law. So the cap comes in through a different part of the law. AIR-VVAC, like all medical providers, making claims under Texas workers' compensation insurance policies, are not allowed to balance bill the injured workers. So it limits them to what the insurance benefit is. But here, the only question is whether, when the state sets the benefits required by the policy, it's regulating the business of insurance. If there was no cap, you would have to pay the balance as opposed to the injured? I don't think that's correct, Your Honor. Well, AIR-VVAC would be allowed to, as it does in other types of insurance, balance bill the insured, in this case the insured worker. So the insurance company pays what it pays. When the state dictates what the insurance company has to pay under its policy, under its contract, it's regulating the business of insurance. We know that from FABE and all of the other Supreme Court cases on McCarran-Ferguson. Separately, if there's a remaining balance that the provider has, just like any other type of loss for which there might be some insurance coverage, that's a separate issue. And it's an interesting question. We certainly think the balance billing prohibition would also qualify as regulation of the business of insurance. But that's not what the law that this court must write on today does. The law that this court must write on today simply defines the benefits. And it defines the benefits required by the insurance policy in much the same way that Perino, one of AIR-VVAC's cases, one of the narrowest McCarran-Ferguson cases, also does. There, the Perino court looked at an insurance policy contract that defined the measure of risk transferred to the insurer. And the policy language there said, the policy limits the insurer's risk to what medically necessary services paid at reasonable charges. That's what Perino said. And it said, that's the measure of risk transferred. What did Perino say about that? That's the fundamental principle of the business of insurance. Transferring the risk and then cabining it, limiting it, measuring it, defining its scope. That's what the insurance policy contracts do. That's what all insurance policy contracts do. In Texas workers' compensation insurance, the state does it. The state writes into the policy what the benefits are and what the limits of those benefits are. And this court's opinion in the Inman case, where the issue was, is a state law incorporated into the insurance policy? That, the court's analysis there guides this court's analysis. There, the court found McCarran-Ferguson applied, just like it should find McCarran-Ferguson applies here, because, and it's even an easier analysis. There, the Mississippi law issue negated arbitration provisions for uninsured motorist coverage. The state law said you can't have those. And so what this court said is, as a matter of law, that state law kind of trumps and is part of any insurance policy provision, any insurance policy that's issued in the state of Mississippi. All right. All right, let's hear from Mayor Evatt. How do you pronounce it? Fuchs? It's actually pronounced Fox, Your Honor. F-O-X. But it's spelled F-U-C-H-S. That's what I asked. Makes for a tough childhood. Mr. Fox. Met Police Court. Your Honors, my name is Joshua Fox. I'm here on behalf of Air Evac. In my time before the court, I intend to address both why the ADA does preempt the laws at issue and why McCarran-Ferguson does not reverse preempt. And turning to the ADA argument first, there's three points I want to make. The first is that the appellants completely ignore the mountain of case law that has already ruled on this very issue. Eighteen cases. Six circuit court cases. Twelve district and state court cases. Six in the workers' comp context itself. Two of those circuit court cases. Dealing with the exact same issues here. All finding that ADA preemption applies. Many of which, Texas Mutual, one of the insurers here, filed amicus briefs and presented some of the very same arguments that this court is asked to consider. It's against that mountain of case law and that backdrop that the court has to analyze this case. The second point I want to make is related to the FAA Reauthorization Act, which came out in 2018. There, Congress doubled down on the Department of Transportation and the Secretary of Transportation's authority, economic authority, over air ambulances and particularly air carriers. So in that Reauthorization Act, the backdrop of it was a 2010 GAO report and a 2017 GAO report. Both of those reports to Congress clearly laid out preemption, how it was being applied in the air ambulance context, even in a workers' compensation case, and what the issues were. Congress had in front of it at the time, in 2018, a change to the preemption clause. It chose not to do that. And instead, it chose to make it clear in the Unfair and Disruptive Trade Practices piece of the Act to make it clear that air ambulances were applied. And it created a committee. And at the top of that committee, it put the Secretary of Transportation. On that committee, it said it needed to also deal with the Secretary of Health and Human Services, related to CMS, where the Medicare and Medicaid sit. Also needed to include state officials related to insurers. It needs to include a lot of people on the committee to evaluate the very issues, the policy arguments, not the textual arguments that have been presented by the opponents in this case, but the policy arguments. It said everybody needs to address it. But at the top of that committee is the Secretary of Transportation, because that's what Congress chose to regulate and to deal with this industry and deal with the economic issues in this industry. The last point I want to make on the ADA is Hodges. Hodges dealt with a very difficult question, which is what is services, which was not defined in the personal injury tort context. That is not what we have here. What we have here is exactly what Judge Wilkinson in the Fourth Circuit said. When you have a statute in workers' compensation that says you get paid X, there is no doubt that that falls within the express text of the preemption provision under the ADA. So it's that backdrop that we need to be looking at this, not the Hodges backdrop. Now, if you wanted to look at it in the Hodges backdrop, what I would point the Court to is the Morales case. In Morales, the United States Supreme Court was dealing with state attorney generals who were attempting to regulate advertising through consumer protection laws. And the Court said that related to price. It had no difficulty in finding that that related to price. Here, price is defined by the ADA, where services was not, and the Court had to struggle with what services versus operation. Here, the price is defined as rate fair charge. They cite testimony from Seth Meyers, the president of Air Evacs, who says, I don't typically use the word price. You know, if you look at the record sites for that, Your Honor, which is at record ROA 1556 through 59, he happened to use cost, fair, or charge is the term he typically used. Two of those actually fit within the definition presented in the ADA, exact words out of that definition. So it is with that, Your Honor, that we ask you to uphold the finding that the ADA does preempt. Now, turning to the McCarran-Ferguson argument, the Supreme Court has made clear, I think, two things in four cases. One is that the business of insurance is the relationship between the insurer and the insured. Two, it is not the relationship between an insurer and a third party. It's not that. There's four cases that the Supreme Court has actually addressed this. All four of them dealt with third parties. Starting with national securities, we had shareholders, laws that related to protecting shareholders. Here, the Supreme Court said not the business of insurance. In royal drug, we had pharmacies, pharmacies who were getting paid cost plus $2 for their drugs, or pharmacies that weren't getting paid cost plus $2. They would have to be paid by the insured. The court, the United States Supreme Court, again, said this is a relationship here, even if it's incorporated in the contract up here between the insurer and insured, it's still here, and it's not the business of insurance. Perino, the court was dealing with chiropractors, and it was dealing with the language of the insurance contract. The language of the insurance contract said, we will reimburse you for reasonable and necessary chiropractic cost. They put in a panel to determine whether or not the services were reasonable and necessary to determine here, this relationship. The chiropractors on the outside, the court said, that's not the business of insurance, because it's not this relationship that you're trying to regulate. It's this one. And then FABE, the case that appellants rely on the most, that also dealt with third parties. It dealt with creditors that were outside of the relationship. We're talking about one statute that had subsections that said the creditor gets paid, the insurer gets paid first, and then there's a series of a waterfall effect for the rest of the creditors. The United States Supreme Court said, for all of the other creditors, that's not the business of insurance. The only one that it actually is, is the relationship between the insurer and the insured. Those four cases set the entire backdrop that's needed for the court to make the decision here. Now, if you look at what FABE really says, it says you go provision by provision, and you look at each provision. So doing that here, Judge Sparks found three statutes, or one statute, two regulations to be preempted. You go provision by provision through those. And you see very clearly, starting with 413-011, and then going to the administrative code, 28, Texas Administrative Code, 134-1, and 134-203, that each one of those are directed at health benefits, or benefits to a third party. Not at the insurer, not at the employer, not at the employee. And in fact, 413-011 sets up that the commission needs to set up maximum allowable rates, or set up rates for payment. If you look at the administrative code, they actually do that. The very first line of it says, maximum allowable reimbursement, when used in this chapter, is defined as the maximum amount payable to a health care provider. It doesn't say insurer, it doesn't say employer, it doesn't say employee. Now, counsel read to you, or said he had the policy that actually goes to the employer. Here's what it says, actually. You will pay promptly, we will pay promptly when due, the benefits required of you by the workers' compensation law. The you there is the employer. The employer has to pay the benefits of the employee, because if the employee is injured, it's got to be made, he or she has to be made whole. The Texas Workers' Compensation Act, they say it's an insurance act. It's not. It's an act that regulates the relationship between an employer and employee, and sets up how that relationship would work in the tort context. Insurance is a component of it. It is. There's no doubt about it. But it is not the focus of it. The focus of it is the employer and the employee relationship. And when you take that and you say the state is inserting itself, and saying this is what you get paid as a provider, as a third party, you're no longer in the relationship between the insurance company and the insurer. You're in the relationship with the insurer and a third party, and you're dictating the rate that's going to be received. It's no different than Royal Drug. Royal Drug was a contract with pharmacies. Here, the state is just enforcing that contract itself. They're inserting it. And it has not been inserted, as counsel suggests, into the actual insurance agreement itself. And even if it was, it doesn't change the analysis. Even if it was, there's not one case they have cited, not one case out there that says when you dictate what a third party is going to receive, what this party down here is going to receive, that that automatically or in any way incorporates it into the business of insurance. In fact, the cases that have analyzed it say the opposite. They don't cite one case for that proposition. They do cite cases that say when the insurer has an obligation, when there's an obligation to the insurer that they have to do X, Y, or Z, that is the business of insurance, but not when you're down here saying what the third party has to do. Now, we have cited several cases that have found when you tell the third party what to do, McCarran-Ferguson does not reverse a preempt. The Third Circuit, the Tenth Circuit at Cox, which Texas Mutual filed an ambiguous brief making the exact same McCarran-Ferguson arguments here, and the Tenth Circuit rejected that. The PHI Court in the Third Court of Appeals in Texas found the same thing. The Bailey Court in the Eleventh Circuit in Florida found McCarran-Ferguson not to apply. And most recently in North Dakota, the Guardian Flight v. Godfreak case in North Dakota. There's actually two cases in North Dakota, the Dwell case, but this is the actually more recent case, the Guardian Flight v. Godfreak case. So, if the court wants to go outside of the air ambulance context for authority here, the Ginord case out of the Sixth Circuit, we believe, is very close to on point and has the same kind of analysis that we believe the court should be doing here, and also the St. Bernard Hospital case out of the Fifth Circuit. So, with that, Your Honors, we respectfully request that you affirm the district court's and find that these laws and regulations that are at issue are preemptive. All right. Thank you, sir. Mr. Baumgartner, I believe you reserved your vote. Counsel just said there's not one case out there that addresses state regulation of insurance contracts that result in payment of benefits to third parties. That's covered by McCarran-Ferguson. That's completely wrong. There are two that this court should care about most prominently. The first is this court's own opinion about what royal drug meant in Texas Pharmacy Association. And there, the court was very clear, and it rejected Air Evac's only argument that it could possibly make that this isn't the regulation of business of insurance. It said that royal drug turned on the fact that it wasn't the insurance policy that was at issue. In royal drug, what was being challenged was private conduct, not a state law. So we're under the McCarran-Ferguson second clause. And it was an antitrust claim. And the issue was a separate arrangement in the court. The Supreme Court was very clear about this, as this court later recognized. The separate arrangement between the insurer and the pharmacies was a separate arrangement, not the policy itself. The court itself in royal drug said that at least twice. And this court in Texas Pharmacy Association recognized that that was the distinction. In Texas Pharmacy Association, this court said that a state law mandating that the insurer provide coverage for pharmacies seeking to be within its network dictated the performance of its policy obligations. So that's not a here-to-here relationship that counsel was talking about. That's payment of policy benefits. And counsel said, the insured doesn't care. That's, this isn't about the insured-insured, insurer-insured relationship. Well, of course the workers care. Of course the employers care. This is payment of benefits on their behalf. It's payment of benefits that they receive for covered services. This is health insurance 101. This is the state law dictating the terms of health insurance in workers' compensation insurance. Rush, the Supreme Court easily said, once we understand that HMO contracts, both our health care delivery agreements and health insurance, in Illinois state law, mandating third-party review, affected the insurer's performance of its policy obligations. Same exact third-party review that was at issue in Perino, but in Rush we had a state law making the insurers do it to determine what coverage and what amounts. That's what these state laws do. These state laws do precisely the same thing that the contract language in Perino did, that the Supreme Court said was a fundamental part of the business of insurance. Acquires the benefits to be paid and sets the scope, sets the measure, the limit on the amount of risk being transferred. And you can't have insurance if you don't limit the risk transferred to the insurer. That's an uninsurable risk at that point, and that's in the record as well. All right, thank you. I forgot to ask, you probably know the answer. I know there's a similar issue pending in the Texas Supreme Court, just as a curiosity matter. What's the status of that, do you know? Yes, so the briefing on the merits has just been completed as of two weeks ago in that case, so we're just awaiting to hear whether the Texas Supreme Court will grant cert and hear argument in that case. Oh, okay, I see. They hadn't granted cert in it yet, it just was... They requested merits briefings, so we're at that stage, but they do it kind of all at once at the end there. It was just a curiosity question when I saw it in there. When they issue an opinion, will it resolve this case? A panel of this court previously declined to abstain. We'd asked the court to just let the state court sort it out, and this court, in its before issuing your ruling. They probably know we have this one, so they may wait on us. Yeah, we... It may be a standoff. You're under no obligation to enter into a standoff. They may take their time ruling on the... Right, this is going to be a Han Solo situation. You shot first. All right, well, thank you, all counsel, for the briefing and argument. The briefing is very well done. It's a complex issue, but we'll dive into it. All right, thank you. Before we call...